## VÉLEZ v. CAMACHO ET AL.

### APPEAL from the District Court of Mayagüez.

No. 48.—Decided February 14, 1905.

CONTRACTS—PURCHASE AND SALE—CONSENT AS TO PRICE AND AS TO THE THING PURCHASED AND SOLD—EXECUTION OF PUBLIC INSTRUMENT.—A contract of purchase and sale, being consensual, is perfected by the consent of the parties as to the price and as to the thing purchased and sold, although the thing sold may not have been delivered, and the legal provisions in regard to the execution of public instruments for the purposes of conveying the ownership of real property do not change the nature of such contract, nor do they establish any essential condition therefor, but only provide a form in the interest of the public independently of the will of the contracting parties, who are bound to execute the public instrument.

PUBLIC INSTRUMENTS—JUDICIAL PROCEEDING.—Judicial proceedings possess the character of public instruments.

CAUTIONARY NOTICE—REQUISITE IN ORDER THAT SAME MAY HAVE LEGAL EFFECT—PREFERRED RIGHTS—THIRD PERSON.—In order that a cautionary notice may have legal force and effect it is a necessary condition that the property with respect to which the same is constituted shall not belong to a third person, but the debtor himself, in order that the right thereby secured may have preference as against other credits created subsequently to the entry of such notice.

ID.—EFFECTS OF ENTRY—SUBSEQUENT CREDITS.—A cautionary notice of attachment directed by judicial order to be entered, and the purpose of which is only to guarantee the outcome of the proceedings, does not create or establish any right whatever, nor does it alter the nature of obligations, nor can it convert into a real or mortgage action one which does not possess that character, nor does it produce any effect other than to give to the creditor obtaining it, only as to the properties entered, preference over other credits against the said debtor created subsequently to the entry of the cautionary notice.

ID.—THIRD PERSONS—RECORD—PERSONAL CREDIT.—For the purposes of the Mortgage Law, in order to determine whether a party possesses the character of a third person, reference must be had to the records and entries, and the latter must be considered in relation to the credits created subsequently to the personal credit guaranteed by the first entry made in the registry.

ID.—NOTICE OF ATTACHMENT.—Notices of attachment levied on property of the debtor cannot prejudice the right of ownership which a third person may have acquired in the same property prior to the entry of such notice by virtue of a contract of purchase and sale in accordance with law, although on the date the notice was entered the formality of reducing the said contract to writing in a public instrument may not have been complied with.

ID.—The provisions of article 44 of the Mortgage Law are in perfect harmony with subdivision 1 of article 71 of the same legal authority.

ID.—COMPLAINT AND INTERVENTION OF OWNERSHIP—RIGHTS OF THE PARTIES—PURCHASE AND SALE—DELIVERY OF REAL PROPERTY.—The question to be discussed and decided in an action in intervention of ownership is merely to determine the rights which the parties may have in the real estate in litigation, just as they appear from the record, and it is immaterial whether the purchaser or plaintiff in intervention acquired a real right in the property by reason of the fact that it was not delivered to him.

ID.—CONSUMMATION OF CONTRACT OF PURCHASE AND SALE.—Upon the perfection of a contract of purchase and sale by the agreement of the parties as to the thing sold and the price thereof, the vendor is bound to comply therewith, and the purchaser has indisputable right to enjoy the ownership of the real estate and to recover the possession thereof. And in this respect it is not a violation of section 1095 of the Civil Code to deny the legal effect, as against the rights of such purchaser, of a cautionary notice entered subsequently to the consummation of the contract.

ID.—PERSONAL ACTION—EXECUTION OF PUBLIC INSTRUMENT.—An action to compel a party to execute a public instrument is personal in its nature, and the entry of the complaint in the registry of property will have no legal effect whatever, because it does not come within any of the cases provided for by article 44 of the Mortgage Law.

COSTS.—Costs must be taxed against the party whose demands have been in all things dismissed.

## STATEMENT OF THE CASE.

This is a case prosecuted in the District Court of Mayagüez by Tomás Vélez y Vélez, a landowner, residing in Cabo Rojo, as plaintiff, and Bernardo Camacho, a resident of Mayagüez, and Sergio Berenguer y Acosta, a manufacturer, in default, as defendants, in the matter of a complaint in intervention of ownership, which case is pending before us by virtue of an appeal taken from the judgment rendered by the said district court, which reads as follows:

"In the city of Mayagüez, the 1st day of April, 1903. The oral and public hearing was had in this civil action, prosecuted by Tomás Vélez y Vélez, a landowner, resident of Cabo Rojo, represented by his counsel José de Diego, as plaintiff, and Bernardo Camacho, a resident of this city, represented by his counsel, Francisco Pelegrí, and Sergio Berenguer y Acosta, a manufacturer, residing in Cabo Rojo, in default in these proceedings, as defendants, in the matter of a complaint in intervention of ownership of a parcel of land.

"On September 8, 1901, Tomás Vélez y Vélez purchased of Sergio Berenguer y Acosta, for the sum of 200 *pesos* gold, 100 *cuerdas* of land situated in the *barrio* of Boquerón, in said municipal district, bounded on the north by the saltpetre beds belonging to Alberto del Toro, on the east by the property belonging to the estate of Federico Vélez, on the south by lands belonging to Rafael Blanes, and on the west by land belonging to Carlos Jofre y Palmer; and as Berenguer did not execute the proper instrument in his favor, Vélez brought an action against him to compel him to do so, on January 15, 1902, in the court of Cabo Rojo. The suit was prosecuted and the municipal court rendered judgment on February 1 of the same year, adjudging the defendant to execute, within the term fixed, the public instrument relating to the contract of purchase and sale entered into between them, upon the delivery by the plaintiff of the 100 *pesos* gold which he had in his possession as the remainder of the 200 *pesos* of the price of the sale of the real property. This judgment was affirmed with costs by this district court on May 3d of that year.

"Don Bernardo Camacho, in proceeding preliminary to execution against Sergio Berenguer, made application for a provisional attachment upon the 100 *cuerdas* of land situated in the *barrio* of Boquerón belonging to his debtor, Berenguer, requesting that a cautionary notice

of the attachment be entered in the Registry of Property of San Germán. This was done on March 14 of last year.

"On August 18, 1902, the municipal judge of Cabo Rojo, Tomás M. Marini y Ramírez, in the default of Sergio Berenguer y Acosta, sold the property in question to Tomás Vélez y Vélez for the price of $200, of which sum it appeared from the record of the oral trial that Mr. Berenguer had received $100, and the purchaser deposited the remaining $100 with the judge, all this being done in compliance with the judgments rendered by the courts.

"Based upon the foregoing, Tomás Vélez y Vélez, citing sections 348, 349, 353 et seq., 1450 and 1251 of the Civil Code; the opinions of the Supreme Court of Spain of April 13, 1880, and March 11, 1884; articles 920, and the concordant ones, 1533 and 1541 of the Law of Civil Procedure; and Rule 63 of General Order No. 118, series of 1899, prayed that, after the proper proceedings, the complaint in intervention of ownership be definitely admitted, and that, consequently, it be held that the property and the fruits gathered and growing thereon belong to the complainant, and must be held subject to his free disposal, the attachment referred to being dissolved, and that an order issue to cancel the corresponding notice in the registry of property.

"Bernardo Camacho prayed that the complaint in intervention be dismissed and that judgment be rendered in his favor, and that the suspension of the judicial compulsory proceedings against Sergio Berenguer be raised, with costs against the plaintiff in intervention, Tomás Vélez y Vélez, and against Sergio Berenguer if he should contest the answer. In support of his petition he alleged that on March 15, 1901, Sergio Berenguer had executed in favor of Bernardo Camacho a private document, in which he acknowledged an indebtedness to him in the sum of $500, promising to return it to him on August 1st of the same year, which promise he did not keep, but kept dealing with Tomás Vélez y Vélez, endeavoring to sell him an estate of 100 cuerdas, the only real property which he possessed, and by the sale of which he would have remained insolvent, to the prejudice of his creditor, Bernardo Camacho; but Berenguer, fearing, perhaps, the liabilities he might incur, did not execute a deed of sale to the 100 cuerdas of land in favor of Tomás Vélez y Vélez, permitting the latter to bring an action against him, and he thus assisted to bring about the rendition of a judgment by the court requiring him to execute a deed of sale for said land, which appears to have been executed by order of the court on August 18 last. When Bernardo Camacho heard of the negotiations between Vélez and Berenguer he determined

to take steps to recover his claim through judicial proceedings, and to this end he instituted proceedings to obtain execution. Upon execution issuing, an attachment was levied on his petition on the 100 *cuerdas* of land situated in the *barrio* of Boquerón, in the municipal district of Cabo Rojo, which belonged to his debtor, Berenguer. On March 14 of this year notice was entered in the Registry of Property of San Germán of the attachment levied on said 100 *cuerdas* of land belonging to Sergio Berenguer, which were recorded in his name in the registry; and five months later, that is to say, on August 22 last, the deed relating to said 100 *cuerdas* of land was recorded in favor of Tomás Vélez, without prejudice to the aforesaid cautionary notice. The petitioner cited in support of his rights the second subdivision of article 42 of the Mortgage Law, sections 23, 25 and 43 of the same law, articles 606 and 1280 of the former Civil Code, and, in addition, article 71 of the said Mortgage Law.

"A day having been set for the hearing, after Sergio Berenguer had been declared in default, of which he was personally notified, the parties introduced such evidence as they deemed proper, which was admitted by the court.

"The following documentary evidence was introduced in these proceedings: A certified copy of the judgment rendered by the Municipal Court of Cabo Rojo on February 1 of last year; a certificate issued by the Registrar of Property of San Germán embodying a copy of the notice of attachment requested by Bernardo Camacho, and of the record in favor of Tomás Vélez y Vélez of the deed of sale executed to him by the municipal judge of said town in the default of Sergio Berenguer y Acosta. Upon the date set for the oral trial, counsel for the parties presented their arguments, there being subsequently made a part of the record, in furtherance of justice, a certified copy of the judgment rendered by this court in the proceedings instituted by Tomás Vélez y Vélez against Sergio Berenguer y Acosta to compel the execution of a public instrument, a majority judgment being thereupon rendered by the court.

"In these proceedings all the provisions of the law have been complied with.

"The presiding judge, Arturo Aponte Rodríguez, delivered the opinion of the court.

"Cautionary notices being certain entries made in the registry of property to secure a right provisionally in the cases and with the formalities prescribed by article 42 of the Mortgage Law, and articles 91 and 92 of the Regulations for its execution, it is evident that if

these cases comprise the case of a person who has, in accordance with law, obtained an order of attachment in his favor which has been levied on real property belonging to his debtor, it is naturally and logically to be assumed that to produce any legal effect it is necessary that the property against which the notice is made shall not belong to a third person, in which capacity Tomás Vélez y Vélez stands with respect to Sergio Berenguer and Bernardo Camacho; but it must belong to the debtor himself, in order that it may then be given preference over other credits contracted subsequently to said notice.

"Bernado Camacho requested that a provisional attachment issue against property belonging to Sergio Berenguer, a record being made of the one levied on 100 *cuerdas* of land on March 14 of last year, at which time this land had already been sold by Sergio Berenguer to Tomás Vélez. This land has been the subject of judicial proceedings in two instances, the vendor being in both cases adjudged to execute the deed of sale in favor of the purchaser, who in this case is the plaintiff in intervention. It cannot be alleged that the instrument was an essential requisite to the contract, because it is well known that a contract of purchase and sale, being consensual, it is perfected by the agreement of the parties as to the price and thing, and the legal provisions which refer to the execution of public instruments for the transfer of the ownership of real property do not vary the nature of such contract, nor do they establish an essential condition thereof, but merely a form in the interest of the public, independent of the will of the contracting parties, who consequently become mutually bound to participate in the execution of the public instrument, according to an opinion of the Supreme Court of Spain of November 24, 1894; this apart from the fact that the action of Tomás Vélez against Sergio Berenguer was instituted prior to the attachment, and the municipal judge also rendered prior to such date the judgment directing the execution of the instrument, which judgment did not become final, owing to the appeal taken to this court, which affirmed that of the lower court. The records of these cases have the character of public documents, according to section 1216 of the former Civil Code, in relation to subdivision 7 of section 595 of the Code of Civil Procedure.

"According to opinions of the Supreme Court of Porto Rico of November 1, 1892, and February 26 of this year, a cautionary notice of attachment, made by judicial order and directed solely to guarantee the results of an action, does not create or declare any right whatsoever, nor does it alter the nature of obligations, nor can it convert an

action not partaking of those characteristics into a real and mortgage action, nor does it produce any other effect than that of making the creditor a preferred one as to the property which is the subject of the notice only, and with regard to those having other claims against the creditor of a date subsequent to the notice, which doctrine is based on a correct interpretation of article 44 of the Mortgage Law.

"The credit of Bernardo Camacho being a personal one, and as he can have preference only over the other creditors of Sergio Berenguer whose claims are subsequent to the date of the record he obtained, it is evident that Tomás Vélez y Vélez is not in such a position, as he acquired the land attached by Camacho by purchase prior thereto, the judge having done nothing more than comply with the regular formality of executing the instrument which the vendor did not wish to execute of his own free will, in accordance with the consensual contract entered into, of which this deed was a consequence.

"Bernardo Camacho, relying on the rights which a cautionary notice gives him, maintains in his argument the principle that he is a third person with respect to Tomás Vélez and Sergio Berenguer, when, according to the Mortgage Law the theory of a third person refers to records and notices, the latter with relation to credits subsequent to the first personal credit noted, according to articles 23, 25 and 44 of the Mortgage Law.

"Costs shall always be taxed against the party whose claims have been in all things denied, according to Rule 63 of General Order No. 118, series of 1899.

"The complaint in intervention of ownership filed by Tomás Vélez against Bernardo Camacho and Sergio Berenguer is sustained, and we direct that the attachment levied on the 100 *cuerdas* of land on the application of Bernardo Camacho be dissolved, placing the said land at the free disposal of Tomás Vélez y Vélez, and that the cautionary notice be cancelled, the proper order to this effect being issued to the Registrar of Property of San Germán, with the costs against the defendants. Let the defendant in default, Sergio Berenguer, be notified in legal form.

"We so pronounce, order and sign, by this our final judgment. Interlineations: Tomás.— de.— of the subsequent credits.— Valid.— Arturo Aponte, J. A. Erwin, R. Roura."

From the foregoing judgment counsel for Bernardo Camacho took an appeal, which was allowed both for review and stay of proceedings, and upon the record being sent up to

this Supreme Court, the parties were duly cited, counsel for the appellant, Emigdio S. Ginorio, alone entering an appearance. The appeal was perfected and a day set for the hearing which was held without the attendance of the parties.

*Mr. Emigdio S. Ginorio,* for appellant.

The respondent did not appear.

MR. JUSTICE FIGUERAS, after stating the foregoing facts, delivered the opinion of the court.

The findings of fact and the conclusions of law contained in the judgment appealed from are accepted.

The effects of the notice of attachment made at the instance of Bernardo Camacho being properly set forth in the third conclusion of law contained in the judgment appealed from, it cannot affect the right of ownership which Tomás Vélez y Vélez acquired in the property the subject of the complaint in intervention, almost six months before, by virtue of the contract of purchase and sale; this doctrine is furthermore in harmony with the principle that "the first in time is the first in law."

Article 44 of the Mortgage Law does not conflict with the first paragraph of article 71 of said law, nor is its scope in the specific case to which it is to be applied unknown; but the moment therefor has not arrived, nor are the other paragraphs to be considered, as they refer to a method of procedure absolutely foreign to the question in controversy.

Upon an examination of the contract of purchase and sale executed on September 18, 1901, it is not possible to invoke a consideration of section 1095 of the Civil Code in order to deduce that the purchaser and plaintiff in intervention Vélez did not then acquire the property right in the estate because it was not delivered to him, for apart from the fact that this matter has not been discussed in the proceedings, nor been the subject of evidence, the question to be considered and decided here is confined solely and exclusively to the rights in

the estate in litigation of the parties to these proceedings, as they appear from the record.

This being the case, it must be agreed that the sale made by Sergio Berenguer to Tomás Vélez was perfected and is binding upon both, because they had agreed on the thing the subject of the contract and on the price, even though such thing had not been delivered, as established by section 1450 of the Civil Code.

Camacho had only a personal right of action against his debtor Berenguer, and not having acquired any real right of action by the notice of the attachment, other than that mentioned in article 44 of the Mortgage Law, neither he nor the vendor can effectively deny the right of the purchaser to enjoy the ownership of the estate, and the right to recover it, which is the object sought by this intervention.

Considering the question at issue in this light, section 1095 of the Civil Code hereinbefore cited, is not violated, because here we have seen that the vendor of the thing became bound under the contract of purchase and sale, and the creditor who had the notice of attachment made was not, nor could he have been, in possession thereof, to plead in his favor any property right whatsoever.

Tomás Vélez y Vélez would not have improved his position had he had a cautionary notice made of his action to compel Berenguer to execute the deed of sale, because he was then exercising a personal right of action, and such a notice, even if made could not have had any effect by reason of the fact that it is not included in any of the cases set forth in article 42 of the Mortgage Law.

The costs should be taxed against the defendants.

In view of the legal provisions cited in the judgment appealed from and in this opinion and in the decisions of the Supreme Court and those of the Supreme Court of Spain of October 12, 1895, February 19 and May 12, 1886, we adjudge that we should affirm, and we do affirm, the judgment ren-

dered by the Mayagüez court on April 1, 1903, and we tax the costs against the defendants.

Chief Justice Quiñones and Justice Wolf concurred.

Justices Hernández and MacLeary dissented.

### Dissenting Opinion of Mr. Justice Hernández.

On February 10, 1902, Bernardo Camacho presented a petition to the Mayagüez court for the purpose of securing the acknowledgment by Sergio Berenguer as his own of a signature affixed to a promissory note executed in favor of Camacho on March 15th of the preceding year, for $500, payable on August 31st of the same year. Execution having issued for the collection of said sum, an attachment was levied on March 7, 1902, on a parcel of land containing 100 *cuerdas,* situated in the *barrio* of Boquerón, municipal district of Cabo Rojo, as belonging to Berenguer. A cautionary notice of said attachment was entered in the Registry of Property of San Germán, under date of the 14th of said month of March.

On January 15, 1902, Tomás Vélez brought a civil oral action in the Municipal Court of Cabo Rojo against Sergio Berenguer, to compel him to execute a deed conveying the ownership of the land in question, pleading in support of his complaint that Berenguer had sold him this land by virtue of a private document, on September 19, 1901, for the sum of $200, of which the vendor acknowledged he had received $100, the purchaser having agreed to deliver to him the remaining $100 at the time of the execution of the deed of sale. The action was prosecuted through all its stages, and judgment was rendered on February 1 following, providing that the defendant Berenguer should within five days execute in favor of Vélez the public instrument pertaining to the contract of purchase and sale entered into by them, upon the delivery by the plaintiff of the $100 he had withheld, as the remainder of the $200, the price of the sale of the real estate.

Sergio Berenguer took an appeal from this judgment to

the District Court of Mayagüez, which affirmed the same by its judgment of May 23, 1902; in consequence thereof the municipal judge of Cabo Rojo, by reason of the default of Berenguer, on August 18th of said year, executed in favor of Vélez, the proper public instrument, which was recorded in the Registry of Property of San Germán on the 22nd of said month of August.

Under these circumstances Tomás Vélez, on September 30, 1902, filed a complaint in intervention of ownership in the Mayagüez court against Bernardo Camacho and Sergio Berenguer, to secure a declaration to the effect that the land attached and the fruits gathered and growing thereon belonged to the plaintiff and should remain at his free disposal, and to decree the dissolution of the attachment and the cancellation of the notice relating to the same.

Bernardo Camacho contested this complaint and prayed that it be dismissed without prejudice to the right which the plaintiff in intervention could exercise in due time under the provisions of article 71 of the Mortgage Law, and the court of Mayagüez, by judgment of April 1, 1903, admitted the complaint in intervention, directing the dissolution of the attachment levied on the 100 *cuerdas* of land, and the cancellation of the cautionary notice. This judgment is the subject of the appeal which the Supreme Court has decided by a majority vote affirming it.

As will be observed, the basis for the complaint in intervention was the deed of sale executed in favor of Tomás Vélez on August 18, 1902, and recorded in the Registry of Property of San Germán on the 22d of said month of August, while the attachment of the estate in question had been levied on petition of Camacho made prior thereto, that is to say, on March 7th of the same year, notice of such attachment being entered in the Registry of Property of San Germán on the 14th of said month. For this reason there is no doubt that Vélez acquired the property subject to the cautionary notice

of the attachment, as was set forth in the record of the ownership of the property in favor of Vélez, in accordance with the provisions of article 71 of the Mortgage Law, the first paragraph of which provides:

"The real property or property rights which are entered may be conveyed or incumbered, but without prejudice to the right of the person in whose favor the entry was made."

And let it not be said that although the deed of sale was executed in favor of Vélez on August 18, 1902, the latter had acquired the property on September 18, 1901, that is to say, prior to the attachment of the land, under a contract of purchase and sale embodied in a private document, because neither this document nor any copy thereof appears in the record which contains mere references thereto; therefore, the terms in which it is drawn are unknown, making it impossible to consider their real scope and legal significance.

However, assuming that there existed a real contract of purchase and sale set out in a private document prior to the date on which it was converted into a public instrument, a contract perfected between the purchaser and vendor, and binding upon both, according to section 1450 of the Civil Code, by reason of the thing which was the subject of the contract having been agreed upon, as the object of this contract was the conveyance of a property right in real property and should appear in a public instrument, according to subdivision 1 of section 1280 of the said code, it could only have given rise to the prosecution of a personal action by which the contracting parties could have mutually compelled each other to comply with the formality of executing the instrument prescribed by law, subject to section 1279, which public instrument, according to section 1462, would have been equivalent to the delivery of the thing which was the object of the contract, which gives rise to the exercise of a real action, which must be the basis of a complaint in intervention of ownership.

The contract of purchase and sale having been perfected in the manner stated, without embodying it in a public document which would have been equivalent to the delivery of the thing sold, such delivery should have been made by placing Tomás Vélez, the purchaser, in power and possession; and as such delivery was not made, Vélez did not acquire any property right in the lands sold, in accordance with the provisions of section 1095 of the Civil Code. For this reason the complaint in intervention of ownership does not lie, according to the legal doctrine which this Supreme Court followed in its opinion of July 18, 1901.

That the delivery of the lands sold did not take place before the execution of the public instrument of sale in favor of Tomás Vélez, is expressly stated in the sixth clause of said instrument, which reads as follows: "The purchaser shall enter upon the possession of the property upon the execution of this instrument," this being further borne out by the notice of attachment served on Sergio Berenguer, who had been appointed the trustee of the property attached, without the slightest intervention on the part of Tomás Vélez.

This question of the delivery of the land sold must be discussed, in order that this appeal may be decided in accordance with the law, because aside from the fact that the law of the Legislative Assembly of March 12, 1903, which converted the Supreme Court of Cassation into an appellate court, authorizes this court to do so, such a discussion is necessary in order to be able to decide whether the complaint in intervention of ownership should be sustained or dismissed, in view of the fact that it was the duty of the party plaintiff to introduce in the action all the elements which are necessary to maintain an action to prove ownership. Such a discussion is especially pertinent in this case, because if by virtue of the private document referred to Tomás Vélez only acquired a personal right of action, his legal position is very different

from that in which he would be if he had acquired a real right of action.

Nor is it possible to maintain that the effects of the public deed of sale executed on August 18, 1902, should date back to a time prior to the attachment, because no cautionary notice of any property right having been made in the registry of property in favor of Tomás Vélez against the lands involved in these proceedings, article 70 of the Mortgage Law cannot favor him.

We agree that Camacho did not acquire any property right by virtue of the notice of attachment, but we maintain that Vélez did not have such right, either, at the time such notice was made; and, therefore, as Vélez had no property right whatsoever in the estate to which the intervention of ownership refers, it is obvious that such intervention could not be successful because Camacho and Vélez at that time only had personal rights of action against Berenguer, and the latter could not claim a right of ownership, nor even of preference, with respect to the former.

For the reasons stated, the undersigned justice dissents from the opinion of the majority of this court, and concurs with Mr. Justice MacLeary that the judgment appealed from should be reversed and judgment rendered in favor of the defendants, with the costs of the action and of the appeal against Tomás Vélez.

### DISSENTING OPINION OF MR. JUSTICE MACLEARY.

Not being able to agree with a majority of the court on the principles of law which govern this case I respectfully dissent from the decision which they have made herein and file the following as my dissenting opinion.

I will first give a brief sketch of the facts presented in the record.

This suit was brought in the District Court of Mayagüez,

by Tomás Vélez y Vélez against Bernardo Camacho and Sergio Berenguer y Acosta; and judgment was rendered therein in favor of the plaintiff on the 1st day of April, 1903. The defendant Berenguer made no appearance either in the court below or in this court. The defendant Camacho contested the claims of plaintiff and on judgment going against him appealed to this court.

The record was filed here on the 2d day of December, 1903, and after the usual proceedings the case was submitted, without oral argument, on the 25th of November, 1904. The counsel for appellant Camacho filed a typewritten brief; but no counsel appeared in court or filed a brief on behalf of the appellee. In the court below the case was decided by a majority of two to one, the special judge rendering a dissenting opinion in favor of Camacho, which is referred to by his counsel and made a part of his brief.

The facts on which this litigation is founded may be stated in their chronological order as follows:

On the 15th of March, 1901, Sergio Berenguer made a promissory note for $500 in favor of Bernardo Camacho, payable on the 31st of August following.

On the 8th of September, 1901, Tomás Vélez purchased from Sergio Berenguer a tract of 100 acres of land, situated in the ward of Boquerón, for the price of $200 American gold, paying $100 cash and leaving $100 unpaid. No deed passed at the time of the sale, only a contract of purchase and sale being made by the parties; which was evidenced by a private document that does not appear in the record.

On the 15th of January, 1902, Vélez brought suit against Berenguer in the Municipal Court of Cabo Rojo, seeking to compel the execution of a deed conveying the tract of land. In this case the municipal court rendered judgment on the 1st of February of the same year, requiring the defendant to execute the deed of conveyance within a fixed period, on

payment of the $100 balance of the purchase money, acknowledged to be still due and unpaid.

On the 10th of February, 1902, Camacho began proceedings in execution against Berenguer on the $500 note, and on the 7th of March attached the tract of land herein mentioned; and notice of the attachment was noted on the register of properties on the 14th of the same month.

In the meantime the case of Vélez *contra* Berenguer, to force the execution of the deed of conveyance, had been appealed and, on the 23d of May, 1902, the District Court of Mayagüez affirmed the judgment.

On the 18th of August, 1902, on the default of Berenguer to appear and conform to the judgment of the court, by the execution of the conveyance, the municipal judge of Cabo Rojo made the conveyance of the tract of land to Vélez for $200 and received the remaining half of the purchase price on deposit in the court in compliance with the judgment already rendered.

On the 28th of August, 1902, this suit was filed, being an action to try title to the 100-acre tract of land aforesaid, and the petition praying that the land and the produce thereof be declared to be the property of the plaintiff and should be left at his free disposal, and that the attachment should be vacated, and that the cautionary notice of the same placed on the registry of property should be cancelled.

The defendant Berenguer made no appearance in the district court and was declared in default. Camacho appeared and answering prayed that the complaint be dismissed, and that an order be made by the court vacating the suspension of all compulsory judicial proceedings against Berenguer, and for costs, etc. The documents aforesaid, to wit: (a) a certified copy of the judgment rendered by the Municipal Court of Cabo Rojo on 1st February, 1902; (b) a certificate of the Registrar of Property of San Germán showing the cautionary notice of the attachment, and the record of the

deed of sale made by the municipal judge to Vélez; also (c) a certified copy of the judgment of the District Court of Mayagüez affirming the judgment of the Municipal Court of Cabo Rojo, were properly introduced in evidence, by the respective parties, and the facts shown thereby were undisputed.

A day was fixed for the trial and the case was heard and decided in favor of the plaintiff on the 1st day of April, 1905, by a majority vote, and a judgment duly prepared and rendered. The said judgment rendered reads as follows:

"Judgment.—In the city of Mayagüez, on the 1st of April, 1903, there took place the public and oral trial of this civil suit, which was prosecuted between parties who were, on one side, as plaintiff, Tomás Vélez y Vélez, a property holder and resident of Cabo Rojo, who was represented and defended by the attorney José de Diego, and on the other side, as defendants, Bernardo Camacho, a resident of this city, who was defended by the attorney Francisco Pelegrí, and Sergio Berenguer y Acosta, a tradesman and resident of Cabo Rojo, who has not appeared in these proceedings, which were prosecuted on account of the intervention of a third party, claiming the ownership of a parcel of land.

"Finding that on the 8th of September, 1901, Tomás Vélez y Vélez purchased from Sergio Berenguer y Acosta, for the sum of $200 gold, 100 *cuerdas* of land, situate in the ward of Boquerón, of the said municipal district, and adjacent on the north to the saltpetre bed belonging to Alberto del Toro, on the east to a property of the heirs of Federico Vélez, on the south to lands of Rafael Blanes, and on the west to lands of Carlos Jofre y Palmer; and as Berenguer had not executed the [corresponding] deed in favor of Vélez, the latter brought suit against the former in the Municipal Court of Cabo Rojo on the 15th of January, 1902, in order that he should execute the said deed; and after the suit had been prosecuted through its different stages the municipal court, on the 1st of February of the same year, rendered judgment, condemning the defendant to execute, within the period fixed in said judgment, the public deed relating to the contract of purchase and sale which he had made with the plaintiff in regard to the aforesaid lands, and that he should do so upon the delivery to him by the plaintiff of the $100 gold which the latter had still in his possession as remainder of the $200 for which the said real property was sold;

which judgment was affirmed, with the costs, by this district court on the 23d of May of the said year.

"Finding that Bernardo Camacho, in the preliminary proceedings of execution against Sergio Berenguer, requested the provisional attachment of 100 *cuerdas* of land situate in the ward of Boquerón and belonging to his debtor, Berenguer, soliciting at the same time that a cautionary notice of the said provisional attachment be entered in the Registry of Property of San Germán, which was done on the 14th of March of last year.

"Finding that on the 18th of August of the same year (1902) the municipal judge of Cabo Rojo, Tomás Marini y Ramírez—Sergio Berenguer not having appeared in court—sold the property referred to to Tomás Vélez y Vélez, for the price of $200, $100 of which had been received by the said Berenguer, as appeared from the record of the oral action, and the remaining $100 were deposited by the purchaser in the hands of the judge, all of which was done in compliance with the judgments rendered by the courts.

"Finding that, based upon the foregoing, Tomás Vélez y Vélez, under citation of sections 348, 349, 353 and the following; 1450 and 1251 of the Civil Code; of the judgments of the Supreme Court of Spain of the 13th of April, 1880, and the 11th of March, 1884; of sections 920 and the corresponding sections, sections 1533 and 1541 of the Law of Civil Procedure, and of rule 63 of. General Order No. 118, series of 1899, requested that, after the proper procedure had been complied with, the action of intervention to try title which had been brought, relating to the land referred to, be definitely declared to be well founded, and that, in consequence of such declaration, it be further declared by the court that the property and the produce collected or to be collected on the same belong to the plaintiff and must be left to his free disposal; that the aforesaid attachment is to be raised; and that orders be issued by the court directing the cancellation of the respective cautionary notice in the registry of property.

"Finding that Bernardo Camacho requested that the complaint in intervention be dismissed and declared to be unfounded, that he be acquitted of the same, and that an order be issued by the court directing that the suspension of the judicial compulsory proceedings prosecuted against Sergio Berenguer be raised and that the costs be imposed upon the intervening party, Tomás Vélez y Vélez, and upon Sergio Berenguer, if he should oppose the answer; and as reasons for said request he alleged that on the 15th of March, 1901, Sergio Berenguer had executed in favor of Bernardo Camacho a private document,

in which he confessed to owe him the sum of $500, and promised to pay the same on the 31st of August of the same year, with which promise he had failed to comply; moreover, he had dealings with Tomás Vélez y Vélez in order to sell to him a property of 100 *cuerdas* of land, which was the only real estate he possessed, and by the sale of which he would have become insolvent, to the prejudice of his creditor, Bernardo Camacho; but, perhaps for fear of the liabilities that he might incur, he did not execute to Tomás Vélez y Vélez a deed of sale of the 100 *cuerdas* of land which he had sold to him, and allowed the latter to bring suit against him, thus contributing to it; that the court condemned him to execute a deed of sale of the said land, which deed seems to have been executed officially on the 18th of August last; but when Bernardo Camacho heard of the negotiations of Vélez with Berenguer he determined to institute judicial proceedings for the collection of his credit, and for that purpose prepared the execution, and after the execution had been issued he requested and obtained the attachment of 100 *cuerdas* of land, situate in the ward of Boquerón of the municipal district of Cabo Rojo, which belong to his debtor, Berenguer, and the attachment of the aforesaid 100 *cuerdas* of land which belonged to Sergio Berenguer and which were recorded in his name in the Registry of Property of San Germán, was recorded in said registry on the 14th of March of this year; and five months later, that is, on the 22d of August last, the deed (of sale) of the same 100 *cuerdas* of land was recorded in favor of Tomás Vélez y Vélez, without prejudice to the cautionary notice referred to; and, finally, the said Bernardo Camacho cited as points of law in support of his rights: Paragraph 2 of article 42 of the Mortgage Law, articles 23, 25 and 43 of the same law; articles 606 and 1280 of the old Civil Code; and, besides, article 71 of the aforesaid Mortgage Law.

''Finding that a day having been fixed for the appearance of the parties in court, Sergio Berenguer was declared in default, and, after he had been personally notified of this, the parties offered such evidence as they deemed convenient to their right, which was admitted by the court.

''Finding that the following documents were presented in this suit: a certified copy of the judgment rendered by the Municipal Court of Cabo Rojo, on the 1st of February of last year; a certificate of the Registrar of Property of San Germán, of which appear the cautionary notice of the attachment requested by Bernardo Camacho, and the record of the deed of sale executed in favor of Tomás Vélez y Vélez by the municipal judge of the said place, while Sergio Berenguer

y Acosta was in default; and, a day having been fixed for the oral hearing of this case, the attorneys óf the parties alleged what they deemed convenient; and, in order to enable the court to render a proper decision, a certified copy was presented of the judgment rendered by this court in the proceedings prosecuted by Tomás Vélez y Vélez against Sergio Berenguer y Acosta with regard to the execution of a public deed; and thereupon the court proceeded to the voting of the judgment, which was rendered by a majority vote.

"Finding that all the legal provisions have been complied with in these proceedings.

"The foregoing having been examined, and the presiding judge, Arturo Aponte Rodríguez, being the examining judge for the drafting of this judgment.

"1. Concluding that, inasmuch as cautionary notices are entries that are made in the registry of property in order provisionally to secure a right in the cases, and with the formalities determined by article 42 of the Mortgage Law and articles 91 and 92 of its regulations, it is evident that if a party, who, in accordance with the law, has obtained an order of attachment in his favor which has been executed on real estate of his debtor, finds himself in one of the cases comprised in the sections above mentioned, it must be naturally and logically inferred that, in order that such cautionary notice in the registry of property may produce its legal effect, the necessary condition is that the property to which it relates does not belong to a third party, such as Tomás Vélez y Vélez is in this suit, with regard to Sergio Berenguer and Bernardo Camacho, but to the debtor himself, so that the right (or credit) referred to in the said cautionary notice may enjoy preference over other debts contracted subsequently to the entry of the aforesaid cautionary notice.

"2. Concluding that Bernardo Camacho requested a provisional attachment of property of Sergio Berenguer, and that the attachment of the 100 *cuerdas* of land was inscribed in the registry of property on the 14th of March of last year, at which time the land referred to had already been sold by Sergio Berenguer to Tomás Vélez y Vélez and was the subject of judicial reclamations in two different instances, in both of which it was decided that the vendor should execute a deed of sale to the purchaser, who in this case is the intervening party; and it cannot be asserted that the requisite of a deed of sale was lacking in this contract, as it is a well-known fact that a contract of purchase and sale, on account of its being consensual, is perfected by the consent or agreement of the respective parties as to the thing sold and

the price of the same; and the legal precepts relating to the execution of public deeds for the transfer of the ownership of real estate do not change the nature of said contract nor establish an essential condition for the same, but a form, in the public interest, which is independent. of the will of the contracting parties, who remain, therefore, reciprocally obliged to execute the public deed in accordance with the judgment of the Supreme Court of Spain of the 24th of November, 1894; this, aside from the fact that the action of Tomás Vélez against Sergio Berenguer was brought prior to the attachment; and prior to the latter, also, the municipal judge pronounced the judgment ordering the execution of the deed, which judgment was not executed in consequence of the appeal taken before this court, which affirmed the judgment of the lower court; and the aforesaid proceedings have the character of public documents, according to section 1216 of the old Civil Code, in relation with paragraph 7 of section 595 of the Code of Civil Procedure.

"3. Concluding that according to the decisions of the Supreme Court of Porto Rico of the 1st of November, 1892, and the 26th of February of this year, the cautionary notice of an attachment inscribed by virtue of a judicial order, and intended only to guarantee the consequences of the judicial proceedings, does not declare nor create any right nor change the nature of the obligations, and cannot convert an action which is not based upon property rights in real estate and which is no mortgage action into an action of such character, and does not produce any other effect than that the creditor who obtains the inscription of such cautionary notice in his favor is preferred, with regard to the property mentioned in the said cautionary notice only, to those creditors who may have claims against the same debtor arising out of debts contracted subsequently to the entry of such cautionary notice in the registry of property, which doctrine is based upon a correct construction of article 44 of the Mortgage Law.

"4. Concluding that while the credit of Bernardo Camacho is a personal credit, and while the latter can have preference only over other creditors of Sergio Berenguer who claim debts contracted subsequently to the entry of the cautionary notice in his favor, it is evident that Tomás Vélez y Vélez is not in the same case (as Camacho), inasmuch as he acquired the land attached by Camacho prior to the attachment and by a deed of purchase and sale, since the judge has done nothing but perform the customary formality of the execution of the deed, which the vendor was unwilling to execute spontaneously in

accordance with the consensual contract which he had made and of which the aforesaid title or deed was the consequence.

"5. Concluding that Bernardo Camacho, relying on the rights granted to him in a cautionary notice (entered in his favor in the registry of property), maintains in the debate the principle that he is a third party, with regard to Tomás Vélez y Vélez and Sergio Berenguer, while, according to the Mortgage Law, the theory of the third party has reference to records or cautionary notices, the latter of which are relating to the credits which are of a later date than (or posterior to) the first personal credit noted (in the registry of property), as set forth in articles 23, 25 and 44 of the Mortgage Law.

"6. Concluding that, according to rule 63 of General Order No. 118, series of 1899, the costs are always to be imposed upon the party whose pretensions have been totally rejected, we adjudge that declaring the complaint in intervention based upon ownership, presented by Tomás Vélez against Bernardo Camacho and Sergio Berenguer, to be well founded, we command that the attachment of the 100 *cuerdas* of land attached by Bernardo Camacho be raised, leaving the same at the free disposal of Tomás Vélez y Vélez; that the cautionary notice be cancelled, and that a duplicate order to that effect be issued in due time to the Registrar of Property of San Germán; and we condemn the defendants to the payment of the costs. And let the defendant in default, Sergio Berenguer, be notified in legal form of the foregoing judgment."

This judgment being rendered by a majority of the court, only the special judge being in the minority filed a dissenting opinion, which reads as follows:

### DISSENTING OPINION.

"In the city of Mayagüez, on the 1st of April, 1903, the undersigned substitute associate judge, after having examined the record of the proceedings of intervention based upon ownership, prosecuted by Tomás Vélez y Vélez, as plaintiff, and Bernardo Camacho and Sergio Berenguer, as defendants, the latter of whom is in default, formulates his dissenting opinion in the judgment rendered in the said suit as follows:

"Admitting the statements of fact contained in the foregoing judgment, with the exception of the first, and substituting therefor the following:

''Finding that Tomás Vélez y Vélez brought suit before the Municipal Court of Cabo Rojo against Sergio Berenguer y Acosta in order that he should execute to him a title to 100 *cuerdas* of land situated in the ward of Boquerón of the said municipal district, which Vélez asserted had been sold to him by the defendant, and after the suit had been prosecuted through all the stages of the procedure the aforesaid municipal court rendered judgment on the 1st of February, 1902, condemning Sergio Berenguer to execute such title, from which judgment the latter took an appeal before this district court, which affirmed said judgment under date of the 23d of May of the same year.

''Concluding that, inasmuch as the judgment condemning Berenguer to execute the deed of sale of the property referred to was not a final judgment, and that it therefore admitted the existence of the contract until the 23d of May, 1902, on which date the judgment of this court was rendered, which has the character of an executory sentence, it could not, and cannot, be asserted that the said landed property belonged to Vélez, who up to the said date had only a contentious right, which did not become effective until a final judicial decision was rendered with regard to the same.

''Concluding that, since Bernardo Camacho had obtained the provisional attachment of the landed property referred to in the preliminary proceedings of execution prosecuted against Sergio Berenguer, and had caused his attachment to be recorded in the Registry of Property of San Germán on the 14th of March, 1902—that is, prior to the judgment rendered by this district court in the aforesaid oral action—it is evident that the attached property still belonged to Berenguer, and that it could be legally attached by Camacho as belonging to said Berenguer.

''Concluding that section 1227 of the Revised Civil Code and section 1280 of the old Civil Code provide that the contracts whose purpose is the creation, transfer, modification or extinction of property rights in real property must appear in a public deed, from which precepts it is inferred, without any effort, that in order that the purchase and sale referred to might be effectual, the existence of a public deed was necessary, for which reason Vélez could only make prevail his right against Camacho after said right had been declared by a final judgment.

''Concluding that the costs must always be imposed upon the party whose pretensions have been totally rejected, it is my opinion that, declaring the complaint in intervention based upon ownership, prosecuted by Tomás Véleź, to be unfounded, the defendants should be

acquitted of the same and the costs should be imposed upon the plaintiff.''

From the aforesaid judgment rendered against him the defendant, Camacho, took an appeal to this court on the 20th of April, 1903, and the original records were filed in this court in due time.

On the appeal the counsel for the appellant in effect makes the following objections to the judgment rendered by the District Court of Mayagüez on the 1st of April, 1903:

First. That the contract of sale made between Vélez and Berenguer, on the 8th of September, 1901, was a private document and not a public deed of sale, and can have no effect whatever against the intervening claim of Camacho. In support of this he refers to section 1195 of the Revised Civil Code and article 27 of the Mortgage Law.

Second. The sale of the 18th of September, 1901, being a contract to transfer the ownership of real estate, should have been executed by a public deed, in accordance with section 1247 of the Revised Civil Code, and with the precepts of the Mortgage Law.

Third. That inasmuch as a cautionary notice in the registry of property does not convert a personal right of the creditor into a mortgage right, nevertheless the claims of the plaintiff and the defendant, who are the appellee and appellant, respectively, being each constituted by private documents, and that of the appellant being six months anterior to that of the appellee, and being otherwise equal, the document of the earlier date should prevail. The title of ownership which Vélez had being recorded on the 26th of August, 1902, five months after the inscription of Camacho's cautionary notice of attachment, could not prejudice the rights of the latter.

Fourth. That the sale made on the 18th of September, 1901, between Berenguer and Vélez must be considered as fraudulent and void, because sufficient cash to pay off the total amount of his indebtedness was not deposited in the bank or

any other establishment satisfactory to his creditor, nor did the vendor retain in his possession sufficient property to cover the amount of his debts. In support of this, appellant refers to judicial order of March 6, 1899, and the explanatory provision of the same made on the 20th of the same month and year.

Fifth. The appellee having acquired encumbered real estate during the litigation, and having been notified of the encumbrance, can only free the property from such encumbrance by paying the amount stated in the cautionary notice, both principal and interest and costs, and failing to do so, the record of his ownership will be cancelled. Up to the 23d of May, 1902, when the judgment rendered by the municipal court was affirmed by the District Court of Mayagüez, Vélez had only a contentious right to the property in question, and it only became effective when the final judicial decision was rendered in regard to the same by the district court on the said date.

Sixth. The precept of the law which announces that the right of the party who has recorded an attachment can be utilized only against later creditors, refers doubtless to rights which have originated after the record has been made, and not to those which, like that of the appellant, were made previously; hence the attachment of the appellant is superior to the conveyance of the appellee.

Seventh. The rule which imposes costs upon the party whose claims have been totally dismissed should apply to the appellee, since nothing can be more stubborn than his complaint and intervention.

These propositions will not be considered by me strictly in the order in which they are presented, but in that order which seems to be logical and natural.

In the first place, it is insisted that the sale by Berenguer to Vélez should be considered as fraudulant and void, because the former failed to make a deposit of money to cover the

debt or to retain in his possession sufficient property to pay the same, as required by judicial order of the 6th of March, 1899, and the amendments thereto.

This court has heretofore considered, in several cases, and among them that of the *Spanish Bank contra Bolívar et al.,* decided on the 23d of May, 1904, (7 P. R. Rep., 68,) the effect of this judicial order, and enforced it in every particular; but in the present case it is not applicable, because no proof whatever was offered on the trial to show that Berenguer did not have other property than that involved in this suit sufficient to pay not only this debt, but any others which he might have contracted. However correct the legal proposition may be, as advanced by the appellant, there being no proof appearing in the record to sustain the same and making it applicable to this case, it cannot have any effect here in the reversal of the judgment.

Secondly, if Vélez has any rights to the property in controversy superior to those of the defendant Camacho, it is on account of the institution of his suit against Berenguer requiring a deed to be made to him, conveying the property and the subsequent conveyance of the property by the municipal judge, in accordance with the judgment rendered in the said suit. And in order fully to determine the preference of rights involved between the parties, attention must be given to the date of the institution of the suit and the delivery of the document executed in accordance with the judgment rendered and to the date on which the cautionary notice of the attachment was inscribed in the registry of property. It was on the 8th of September, 1901, that Vélez purchased the tract of land from Berenguer, and on the 15th of January, 1902, he brought suit to compel the execution of a deed of conveyance, judgment in compliance with his complaint being rendered on the 1st of February of the same year in the municipal court, and affirmed on appeal on the 23d of May following. But Vélez failed to require a cautionary notice of his suit at the

time it was instituted, to be entered in the registry of property, and nothing appeared therein to show what rights he had acquired to the land prior to the time when Camacho began his proceedings in execution against Berenguer on the $500 note and levied his attachment thereon, filing a cautionary notice of the same in the registry of property on the 14th of March, 1902, thereby securing priority in the registration over Vélez, who was proceeding without having filed a cautionary notice. If Vélez, on bringing his suit against Berenguer to compel the delivery to him of the public document, in accordance with the private document which had previously been executed, and conveying the land sold to him by Berenguer, had placed upon the record a cautionary notice of the suit, it would undoubtedly have been prior to the notice of the attachment begun at the instance of Camacho, and his preferred rights over the attachment would have been secured. But he failed to do this, and consequently the maxim that "the law aids those who are vigilant, not those who sleep upon their rights" must be applied in this case. (Broom's Legal Maxims, 892; Black's Law Dictionary, 1222.)

The mere delivery by Vélez of the private document to the municipal judge and the institution of the suit thereon to compel the execution of the title, without a cautionary notice being filed in the registry of property, cannot serve as notice to Camacho and deprive him of the benefit of his attachment, which was properly levied, with accompanying notice upon the record.

Thirdly, aside from all this, after studying carefully articles 1195 and 1247 of the Revised Civil Code, and articles 27, 44 and 71 and paragraphs 1, 2, 3 and 4 of article 42 of the Mortgage Law, we must arrive at the conclusion that a transfer of real estate cannot be effected solely by the delivery of a private writing for the bargain and sale thereof, but that the execution and delivery of a public writing or deed

of conveyance is necessary before any legal effect can be produced, as to the transfer of the property, or before priority can be attained in favor of the purchaser over an attachment already entered on the registry of property at the date when a private contract is raised to a public document.

This being clearly apparent from the view which I take of the law, the rights of the respective parties, Vélez and Camacho, as to the land in controversy, must date and take effect from the time, in the one case, when Camacho recorded his cautionary notice of attachment; that is to say, on the 17th of March, 1902, and in the other when Vélez received his final conveyance from the municipal judge of Cabo Rojo, and had the same inscribed in the registry of property; that is to say, on the 18th of August, 1902, more than five months thereafter.

It is unnecessary to consider more at length the other questions presented on the hearing of this case, as the points noticed are fundamental and sufficient whereon to base the decision of the whole case, and it should result in a reversal of the judgment rendered in the trial court.

Such being the state of facts existing between the parties, and the law applicable to the same, Vélez should take the title to the property which he bought from Berenguer, subject to the attachment lien imposed thereon by Camacho, and before his title can be clear he should pay off the secured debt which exists in Camacho's favor.

These being my views in regard to the matter involved in the case at bar, the judgment of the District Court of Mayagüez, rendered on the 1st of April, 1903, ought, as I am convinced, to be reversed and a judgment entered in said court in favor of Camacho as indicated herein.